Dorothy E. Hicks v. Commissioner. Lillian Thompson Swafford v. Commissioner.
Hicks v. Commissioner
Docket Nos. 4841-70 SC, 4842-70 SC.
United States Tax Court
T.C. Memo 1971-298; 1971 Tax Ct. Memo LEXIS 34; 30 T.C.M. (CCH) 1259; T.C.M. (RIA) 71298; November 24, 1971, Filed. James L. Fuqua, Jr., Housholder, Cosner,tomlin & Parsons, Suite 420, Stahlman Bldg., Nashville, Tenn., for the petitioners. John B. Harper, for the respondent. CALDWELL
Memorandum Findings of Fact and Opinion CALDWELL, Commissioner: The respondent determined deficiencies and additions to tax under section 6653(a) of the 1954 Code [1] against the petitioners, as follows: Addition
Petitioner
Year
Deficiency
to Tax
Dorothy E. Hicks
1966
$299.00
$14.95
1967
310.00
15.50
Lillian Thompson Swafford
1966
216.00
10.80
1967
131.00
6.55
*35 1260 The issues presented for decision in each case are (1) the correct amount of tip income received by the petitioner in each year, and (2) whether the petitioner is liable for the addition to tax for negligence or intentional disregard of rules and regulations for each year. The cases have been consolidated, pursuant to joint motion of the parties, for trial, briefing and opinion. Findings of Fact Some of the facts have been stipulated. The stipulation of facts in each case, together with the exhibits attached to each stipulation, is incorporated herein by reference. Petitioner Dorothy Hicks resided in Nashville, Tennessee, at the time of filing her petition in this case. Her Federal income tax returns (Form 1040A) for the years 1966 and 1967 were filed with the district director of internal revenue at Nashville. Petitioner Lillian Swafford resided in Nashville, Tennessee, at the time of filing her petition herein. Her returns (Form 1040A) for the years 1966 and 1967 were likewise filed with the district director at Nashville. During each of the years involved, each petitioner worked as a waitress. Miss Hicks worked throughout both years at the Cross-Keys Restaurant *36 in the Green Hills Shopping Center, located on Hillsboro Road in the Nashville suburbs. Mrs. Swafford worked throughout 1966 and up until May 19 or 20, 1967, at the same restaurant. The parties have stipulated that after a brief illness in May 1967, Mrs. Swafford obtained employment as a waitress at the Biltmore Restaurant in the Biltmore Motel on the Franklin Road in the Nashville suburbs. Except for periods of illness, she worked at the Biltmore for the remainder of 1967. The Green Hills Shopping Center was developed in the early 1950's and is located in an upper middle class suburban area of Nashville. It contains branch stores of two of the leading downtown department stores, as well as a branch of one of the city's leading men's furnishings stores. Numerous other business establishments were also located in the shopping center; and several physicians had offices close by to the center. The Cross-Keys Restaurant was open on Mondays through Saturdays from 10:30 A.M. to 7:30 P.M. or 8:00 P.M. in the evening. At luncheon, its patronage was chiefly the persons working in the shopping center and ladies who stopped in for lunch while shopping. At dinner, the clientele consisted primarily *37 of family groups and professional people. Although a coat and tie were not required, a patron would feel more appropriately dressed in a coat and tie at the evening meal than he would without them. The restaurant was a middle class restaurant; it was not a short-order or fast food establishment. It did not cater to the teenage trade. It served extensive menus, the luncheon menu containing more than 40 entrees and the dinner menu more than 30 entrees. Prices for the entrees ranged from less than $1.00 to over $5.00. During the years in question, the restaurant sold no alcoholic beverages. Each petitioner received tips from customers, although not every customer would leave a tip. Neither petitioner made a concurrent record of her own reflecting the tips which she received. However, during 1966 and 1967, the restaurant made available to its waitresses forms on which to report to the restaurant weekly the tips received during that week. The forms contained spaces for recording daily tips. The forms were not distributed to the waitresses by any person or at any particular time during the week. They could be picked up by the waitresses at their convenience at any time prior to the end *38 of the work week. The purpose of these forms was to provide the restaurant with information necessary to compute Federal withholding taxes and contributions to social security. The forms were turned in weekly and were retained by the restaurant for an unknown length of time. Each petitioner made an entry on the form supplied to her, each day, which she claims to have been the tips received for that day. The wages paid by the restaurant during 1966 and 1967 were at the following rates: Period
Wage Rate
1- 1-66 to 10- 2-66
$2.00 per day
12- 2-66 to 11-27-66
2.50 per day
11-27-66 to 2- 5-67
3.00 per day
2- 5-67 to 12-31-67
.50 per hour The work day of a waitress at the Cross-Keys Restaurant was usually from 7 to 7 1/2 hours. The following schedule shows the amounts of wages received by each petitioner and 1261 the amount of tips which she reported to the restaurant in 1966 and 1967: Wages
Tips
Yearly
Petitioner
Year
Received
Reported
Total
Hicks
1966
$781.00
$793.65
$ 1574.65
1967
983.75
740.65
1724.40
Swafford
1966
705.25
730.13
1435.38
1967
252.25
195.10
447.35 Except as to petitioner Swafford *39 for 1967, the yearly totals are the amounts of gross income reported on petitioners' 1966 and 1967 income tax returns. For the year 1967, petitioner Swafford reported $1,276.31 as the gross income on her return for that year. The average weekly tips reported by petitioners were as follows: Average Weekly
Petitioner
Year
Tips Reported
Hicks
1966
$15.55
1967
14.24
Swafford
1966
14.47
1967
10.84
In 1966, petitioner Hicks worked 1,634.5 hours as a waitress, and in 1967, 1,754.5 hours. In each year she worked 12 days as a hostess for which she received no tips but was paid a flat rate of $10 per day. In 1966, petitioner Swafford worked 1,491 hours as a waitress at the Cross-Keys, and in 1967, 429.5 hours at that restaurant. She worked approximately 16 days in 1966 as a hostess, and in 1967, 7 days, receiving $10 per day and no tips while thus employed. Neither petitioner made any payments to busboys from the tips she received at the Cross-Keys. The tips from the Cross-Keys reported by petitioner Hicks in 1966 and 1967 were 3.4 percent and 3.1 percent of her approximate total sales in each year. The tips reported by petitioner Swafford in those *40 years were 3.4 percent of her approximate total sales in each year. In his statutory notices of deficiency the respondent determined that each petitioner had realized income from tips at the Cross-Keys in each year, greater in amount than that reported on her returns. The following reconstruction of petitioner Hicks' 1966 tip income illustrates the method employed by respondent: Total sales, Cross-Keys
* $330,126.00
Total hours worked by waitresses
* 22,862.0
Average sales per hour by wai- tresses
$ 14.44
Average percentage of tips received on average hourly sales, as deter- mined
11%
Average tips received per hour
$ 1.58
Hours worked as waitress by Miss Hicks
* 1,634.5
Total income from tips for the year
$ 2,582.51
Tip income reported in return $ 793.65
Adjustment, increase on tip income
$ 1,788.86
Through use of the foregoing formula, respondent asserted in his notices of deficiency that petitioners' income from tips at the Cross-Keys for 1966 and *41 1967 was as follows: Petitioner
Year
Tip Income
Hicks
1966
$2,582.51
1967
2,596.66
Swafford
1966
2,355.78
1967
635.66
Petitioner Swafford also received tips when she was employed at the Biltmore Restaurant, after she had left the Cross-Keys, but she did not report any such tips to her employer. During the course of his investigation, respondent's agent was informed by petitioner that her tip income was at least as much as her wages. Her wages at the Biltmore for 1967 were $505.71. Opinion As regards both petitioners and their employment at the Cross-Keys Restaurant, the dispute centers on the amount of tip income received by each petitioner. Counsel for petitioners contends vigorously that each petitioner reported regularly to the restaurant each week, the amount of tips which she received as a waitress, and that the amounts which she thus reported were noted down by her, daily, on the forms provided to her by the restaurant for that purpose. The respondent, on the other hand, in the absence of records maintained by the petitioners themselves, [2] has resorted to a formula to 1262 reconstruct their tip incomes. Comparable formulas have *42 been utilized by the respondent, and approved by this Court, in earlier cases. See, for example, Eaker B. Griggs and Lovetta Griggs, T.C. Memo 1971-33; and Peter Chippi and Mary M. Chippi, T.C. Memo 1971-236. At the ouset, we state that the system of reporting tips to their employer suffices as adequate system of record keeping by the petitioners. See section 31.6053-1(a), Employment *43 Tax Regs., which permits the employer to facilitate the employee's record keeping duties by providing space on regularly used forms. The difficulty is that we are not satisfied as to the accuracy of the amounts so reported by the petitioners to Cross-Keys. What the Supreme Court said in Holland v. United States, 348 U.S. 121, where the Court approved the net-worth method of reconstructing the income of a taxpayer who had maintained books and records, is apposite here: Petitioners' accounting system was appropriate for their business purposes; and, admittedly, the Government did not detect any specific false entries therein. Nevertheless, if we believe the Government's evidence, as the jury did, we must conclude that the defendants' books were more consistent than truthful, before they had even reached the recording stage. Certainly Congress never intended to make section 41 a set of blinders which prevents the Government from looking beyond the self-serving declarations in a taxpayer's books. The exceedingly small percentage of tips reported by each petitioner, in relation to the sales which she made, appear to us wholly unrealistic and unreasonable, and we do not *44 believe that the reported tips were an accurate refletion of the tips which each in fact received. We therefore hold that the respondent's use of a formula for reconstructing their tip incomes was proper. We think, however, in light of the type of restaurant which the Cross-Keys was - not catering to the "big spender" trade and selling no alcoholic beverages, and in light of the fact that some customers did not tip at all - that his percentage figure for tips is somewhat high. We think that 8 percent is a more realistic figure. We direct that the latter figure be applied in the computations under Rule 50. Turning to petitioner Swafford's tip income at the Biltmore Restaurant in 1967, the record is far from satisfactory. The parties have stipulated that after she left the Cross-Keys in May of that year, the only employment she had during the remainder of the year was at the Biltmore. Yet, in her somewhat confusing testimony on this matter, she testified that she worked at two other restaurants, the New Orleans and a Holiday Inn. In our findings of fact, we have followed the stipulation of the parties. The respondent, in his notice of deficiency, has determined, in accordance with *45 petitioner Swafford's advice to him during the course of his investigations, that her tips at the Biltmore were the same as her wages from that restaurant. Respondent deducted from the total wages reported on her return for 1967 ($1,276.31) the amount of her tips and wages from Cross-Keys ($447.35) in order to arrive at petitioner's wages from the Biltmore ($828.96). At the trial, petitioner's copy of her form W-2 from the Biltmore was received in evidence, and thereon her wages were shown to be $505.71. In the foregoing circumstances, we hold that she received tips of that same amount while employed at the Biltmore in 1967, which were not reported as income on her return for that year. It may be that the amount of $323.25 ($828.96 less $505.71) was in fact earned by petitioner at the two other restaurants mentioned. However, the only adjustment before us for her taxable year 1967 (other than her Cross-Keys tip income) is with respect to her tips at the Biltmore. We, of course, pass no judgment on whether she had any unreported tip income from either the New Orleans or the Holiday Inn restaurants. Turning finally to the additions to tax imposed under section 6653(a) for negligence *46 or intentional disregard of rules and regulations, we hold that the respondent was justified in the imposition of those additions upon each petitioner for each year. At the very least, petitioners were negligent in not reporting to Cross-Keys the true amount of the tips which they received. A conscientious adherence to that system of reporting would have shown their true tip income. Such adherence was not given by the petitioners, and, at the very least that failure constitutes negligence. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered under Rule 50. 1263 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated. Dorothy E.↩
*. The parties in each case have stipulated for each year, the total sales of the restaurant, the total hours worked by all waitresses, and the hours worked as a waitress by each petitioner.↩
2. At the trial, petitioner Swafford offered and there was received into evidence as petitioners' Exhibit 6, a diary maintained by her for each of the years 1966 and 1967. Therein she claims to have entered each day the amount of tips which she received. Those diaries were never shown to the representatives of the respondent during the course of his investigation, nor was petitioners' counsel shown them until the Saturday preceding the commencement of trial on Monday, August 2, 1971. While we have no doubt that petitioner maintained the diaries during those years, we have serious doubts that she entered her tips therein concurrently with her receipt thereof. Burdened with those doubts, we have made no findings with respect to petitioner Swafford's income based on Exhibit 6.↩